*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF NANCY ANN MANNAUSA, DECEDENT.

PAUL HRESKO,

        Petitioner-Appellant,

v

NANCY COYLE,

        Respondent-Appellee.

UNPUBLISHED
August 12, 2026
2:11 PM

No. 370656
Antrim Probate Court
LC No. 23-014301-CA

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

In this case, Fiduciary Services North, Inc., was appointed conservator over the estate of Nancy Ann Mannausa, a legally incapacitated individual, under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. During the underlying proceedings, petitioner-Appellant, Paul Hresko, paid Mannausa's attorney $15,000 for Mannausa's legal fees. Appellant appeals as of right the probate court order denying Fiduciary Service's petition, which sought the probate court's approval to reimburse appellant $15,000.[1] We reverse the probate court's order and remand for the probate court to analyze whether appellant's $15,000 check constituted a loan or a gift, and if it constituted a loan, whether Mannausa was legally capable of agreeing to such loan.

## I. FACTS

---

[1] During the pendency of this appeal, appellee's ward passed away and Nancy Coyle was subsequently appointed personal representative of the estate of Nancy Ann Mannausa, decedent. This Court then ordered Coyle to be substituted as appellee in this matter in her capacity as personal representative of the estate.

-1-

Appellee was Mannausa's niece, and had served as Mannausa's attorney-in-fact under a power of attorney, both medical and general, since 2017. In 2020, Mannausa was diagnosed with dementia, likely a consequence of Alzheimer's disease, and appellee moved into her aunt's house to care for her. In February 2023, appellee filed a petition in the probate court (the guardianship action), asserting that her aunt lacked the capacity to make or communicate informed decisions, and requesting that the court appoint her full guardian. An attached report of Mannausa's physician, dated December 19, 2022, explained that she suffered from dementia, "likely Alzheimer[']s" and was unable to make informed decisions regarding supportive services, personal financial affairs, or "authorizing or refusing medical treatment." In March 2023, the court appointed an attorney to represent Mannausa in the guardianship action; however, eight days later, attorney Adam Lett filed an appearance as counsel for Mannausa and thereafter acted in that capacity.

In April 2023, appellee initiated this case (the conservatorship action) by filing a petition requesting that she be appointed conservator of her aunt's estate. She alleged that her aunt was unable to manage her property and business affairs effectively because of her dementia. In an attachment to her petition, appellee explained that she had filed the guardianship petition at the suggestion of a social worker with Antrim County Adult Protective Services, after her aunt had given approximately $400,000 to a friend. Appellee also asserted that Lett knew Mannausa was suffering from dementia, but nevertheless: (1) assisted her in drafting a new power of attorney and designation of patient advocate,[2] and (2) cashed a $10,000 check from Mannausa, which she had no recollection of signing. Lett objected to appellee's petition, asserting that Mannausa believed appellee was unsuitable because she had a history of acting in her own self-interest rather than for the benefit of Mannausa, and that Mannausa had executed a new durable power of attorney naming appellant[3] as her attorney-in-fact and nominating appellant as conservator.

The proceedings moved forward, and the probate court eventually appointed: (1) Alyse Tarbutton as guardian ad litem in both the guardianship and conservatorship proceedings; (2) Fiduciary Services and appellant's wife, Patricia Hresko, to serve as co-guardians; and (3) Fiduciary Services as conservator.[4]

In September 2023, Fiduciary Services filed a petition for approval to reimburse appellant $15,000, stating as follows:

---

[2] The probate court expressed concerns that Mannausa did not have the capacity to execute these documents; the parties eventually entered into a stipulated order, stating that "All Durable Powers of Attorney and all Designations of Patient Advocate (or Durable Powers of Attorney for Health Care) executed by Nancy Ann Mannausa are hereby declared null and void and shall no longer be effective for any purpose . . . " as of June 29, 2023.

[3] Appellant was "a Eucharistic minister [who brought] holy communion to the home bound," including Mannausa.

[4] The guardian ad litem was appointed in May 2023, and the guardian and conservators were appointed in June 2023.

> Mr. Adam Lett, acting attorney for Ms. Nancy Mannausa, needed payment for his legal services provided prior to Ms. Mannausa's scheduled court hearing on 06/29/2023. At this time, our official involvement had not yet started, and we were unable to provide an immediate payment. Under the circumstances, [appellant] had to borrow $15,000 from a personal friend to cover the legal services provided by Mr. Lett. The payment of $15,000 was applied to Ms. Mannausa's outstanding balance on 6/22/2023.

Attached to the petition was a copy of the $15,000 check, which was made directly from appellant, payable to Lett, "[f]or Nancy Mannausa." Fiduciary Services also attached a document indicating that Lett had billed Mannausa $40,180.18 between March 14, 2023 and August 16, 2023. Appellee objected to Fiduciary Service's petition, stating that Lett's fees were "exorbitant" and expressing "serious concerns about the fees The Law Office of Adam Lett has collected and why [appellant] paid some of those fees when those fees could have been paid directly from Nancy Mannausa (through her power of attorney or via Court Order)."

In November 2023, the probate court addressed Fiduciary Service's petition. The probate court questioned how Mannausa was able to retain Lett's counsel when the court had previously observed Mannausa not be able to recognize Lett in the court room. The probate court determined that Lett had "gouged" Mannausa for the "excessive" amount of $40,000 in attorney fees. The court ultimately denied Fiduciary Service's petition for reimbursement, stating "This Court can't approve a $15,000 payment. I think maybe you need to look at Mr. Lett for reimbursement for overcharging, quite frankly. But I can't—I can't approve a loan that was taken out for legal services for someone the Court had no idea who it was." Accordingly, the court's reason for denying the petition centered on: (1) Mannausa's lack of mental capacity to retain Lett, and (2) the unreasonableness of Lett's fees.

Appellant, appearing *in propria persona*, moved for reconsideration, pleading that the court allow Fiduciary Services to reimburse the $15,000 that he loaned, not gifted, Mannausa.[5] Appellant alleged that he was a eucharistic minister who believed that Coyle was abusing Mannausa; accordingly, he called adult protective services to investigate.[6] He asserted that he and

---

[5] Notably, Fiduciary Service's petition for reimbursement stated that appellant had borrowed the $15,000 from a "personal friend," but in his motion for reconsideration, appellant stated that when making this "loan," he had to access money that was set aside in his sons' college fund. Regardless, the $15,000 check was clearly associated with appellant and his wife's bank account.

[6] A report of "vulnerable adult abuse" was thereafter filed with the State Police, but the Antrim County Prosecutor declined to authorize charges. A few days after appellant called adult protective services, Mannausa filed a petition requesting entry of an ex parte personal protection order prohibiting Coyle from entering her property, assaulting or molesting her, and stalking her. She attached two pages describing Coyle's alleged mistreatment of her, including daily harassment, threats and intimidation, and assertions that Coyle was only concerned about inheriting her house and using the power of attorney to spend her money. There is no accompanying order in the lower court file, but according to Coyle, Mannausa's request for a personal protection order was denied.

his wife loaned Mannausa the $15,000 for attorney fees "while she was trying so desperately to get Nancy Coyle removed from her home." The probate court denied appellant's motion, (1) stating that a motion for reconsideration that merely presents the same issues will not be granted, and (2) emphasizing its determination that Mannausa did not have the mental capacity to retain Lett. Appellant now appeals.[7]

## II. STANDARDS OF REVIEW

"This Court reviews the probate court's findings of fact for clear error. A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *In re Huntington Estate*, 339 Mich App 8, 17; 981 NW2d 72 (2021) (quotation marks and citation omitted). "We defer to the probate court on matters of credibility, and [we] will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Conservatorship of Murray*, 336 Mich App 234, 240; 970 NW2d 372 (2021) (quotation marks and citation omitted). "The probate court's decisions are generally reviewed for an abuse of discretion." *In re Huntington Estate*, 339 Mich App at 17. "We also review a trial court's decision to deny a motion for reconsideration for an abuse of discretion." *Shawl v Spence Bros, Inc*, 280 Mich App 213, 218; 760 NW2d 674 (2008). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes. An error of law necessarily constitutes an abuse of discretion." *In re Huntington Estate*, 339 Mich App at 17 (quotation marks and citations omitted).

## II. ANALYSIS

On appeal, appellant raises several arguments concerning the probate court's denial of Fiduciary Service's petition for reimbursement.[8] Appellant's overarching argument is that the probate court mistakenly focused on the reasonableness of Lett's attorney fees when the claim strictly concerned the funds that appellant lent to Mannausa, not Mannausa's business arrangement with Lett. We agree that the probate court's analysis was improperly focused, and we remand for further proceedings consistent with this opinion.

---

Regardless, about a week later, the probate court ordered Coyle to vacate Mannausa's home and only return with Mannausa's permission.

[7] On appeal, appellant is also represented by Lett.

[8] To the extent that appellant now argues that the probate court improperly determined that Mannausa did not have the right to hire her own attorney, and was instead required to use court-appointed counsel absent court approval to do otherwise, that argument lacks merit. The probate court did not preclude Lett from representing Mannausa; therefore, the court did not deny Mannausa's right to engage her own counsel. Additionally, to the extent that appellant now argues that the probate court improperly questioned appellant's standing, that argument is immaterial as the probate court never concluded that appellant lacked standing in this case.

The probate court's decision to deny reimbursement to appellant was wholly premised on: (1) Mannausa's lack of mental capacity to retain counsel, and (2) the unreasonableness of Lett's fees.[9] The trial court improperly focused on these considerations because the request for reimbursement did not come from Lett, asking for reimbursement of attorney fees; instead, the request came from appellant, asking for reimbursement of a check that he wrote "[f]or" Mannausa. Although that check was used toward attorney fees, the reimbursement would not be paid to Mannausa's attorney; it would be paid to appellant for an allegedly agreed-upon loan. Accordingly, the appropriate inquiry did not concern Lett's relationship with Mannausa; it concerned appellant's relationship with Mannausa.

Appellant wrote Lett a check for $15,000, noting that it was "[f]or" Mannausa. Appellant alleges that this check constituted an agreed upon loan; however, there is no record evidence of appellant and Mannausa's agreement regarding this payment, and the probate court did not address whether this payment constituted a valid, agreed upon loan. "Given that issues of fact not decided by the lower court must first be addressed, the interests of judicial economy are not well served by an initial ruling on this question by this Court." *In re Duke Estate*, 312 Mich App 574, 584 n 4; 887 NW2d 1 (2015). On remand, the probate court must consider whether the $15,000 check constituted a loan or a gift, and if it constituted a loan, whether Mannausa was legally capable of agreeing to such loan.[10]

## III. CONCLUSION

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace

---

[9] Interestingly, despite these findings, the probate court allowed Lett to represent Mannausa throughout these proceedings.

[10] Because this appeal was filed prior to the death of appellee's ward, this Court has no inventory or other record indicating whether there are sufficient funds in estate to satisfy the alleged debt, after payment and/or reimbursement of funeral and burial expenses and any appropriate exemptions or allowances permitted under EPIC, i.e., that issue will be decided by the probate court.